Mary E. Mercer, Administratrix of the Estate of Charles Mercer, Deceased, Appellant, v. Frederick E. Meinel, Appellee.

### Gen. No. 24,426.

1. DEATH, § 18*—*when grantor of property not liable for death of son of grantee's tenant resulting from defect in property.* The grantor of improved property, which at the time of its sale, contained a water heater which had been installed without a permit as required by ordinance, and which had a defective ventilation pipe, was not liable for the death of the son of the tenant of a grantee, caused by the inhaling of gas which escaped because such pipe ended in the bathroom in question, instead of having an exhaust on the roof.

2. DEATH, § 18*—*when grantor of property not liable for death of son of grantee's tenant resulting from defect in property.* A hot-water heater in a bathroom was a fixture and went with the realty at a sale of the latter, and therefore the grantor was not liable for the death of the son of a tenant of his grantee, caused through defects in a pipe connected with such heater, the grantor having made no representation whatever to his grantee.

3. DEATH, § 18*—*when grantor of property not liable for death of son of grantee's tenant resulting from violation of ordinance by grantor.* The fact that there was an ordinance in existence at the time of the sale of the real estate in question, requiring a permit for the installation of a water heater in a private house, did not give rise to any obligation on the grantor so as to render him liable for the death of the son of a tenant of the grantee caused by an improper use of such heater and its appliances, which had been installed without the permit required by such ordinance, because after the sale the ordinance bound the grantee but not the grantor.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Mercer v. Meinel, 214 Ill. App. 532.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed July 2, 1919.

CHILTON P. WILSON, for appellant.

BEACH & BEACH, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff, whose minor son had been killed by inhaling carbon monoxide gas, emitted by an alleged defective water heater in the bathroom at their home, brought suit as administratrix of his estate against the defendant for damages. At the close of the plaintiff's evidence the trial judge directed a verdict for the defendant. From a judgment upon that verdict this appeal is taken.

The declaration contained three counts. The first count alleged, *inter alia,* that on January 1, 1914, the defendant owned the premises at 535 North Albany avenue, Chicago, and installed therein a water heater in the bathroom; that said heater had an exhaust or ventilating pipe running from the top and a burner to be lighted to heat the water for bath purposes; that the ventilating pipe from the heater ran up in a corner of the bathroom and ended inside of the bathroom below the ceiling and behind the flush box so that on entering the bathroom it could not be seen; that the exhaust or ventilating pipe ended inside of the bathroom; that when the heater was lighted it consumed the oxygen and other parts of the air and gave off carbon and other material in the bathroom and was thereby installed in a negligent and careless manner so as to be dangerous for the purposes for which it was to be used; that the defendant occupied the premises for several months prior to January 1, 1914, with

said heater so installed and knew its dangerous condition; that on July 23, 1914, the defendant sold the premises to Charles Kocher without informing him of the manner in which said heater was installed, or that said exhaust pipe ended in the bathroom or of the dangerous condition thereof; that on October 12, 1914, Kocher leased the premises to the plaintiff and her family who thereafter occupied them as a dwelling; that on August 29, 1915, while the heater was lighted and heating water for the purpose for which it was intended, the said Charles Mercer, son of the plaintiff, who was in the exercise of care and taking a bath in said room, was poisoned and killed by carbon monoxide gas generated in said bathroom by reason of the careless and negligent manner in which said heater was installed.

The second count alleged, *inter alia,* that at the time the heater was installed there was an ordinance providing that the ventilating pipe should extend to a chimney flue or opening to carry out escaping gas or fumes, and that the heater was installed contrary to provisions in the ordinance.

The third count alleged, *inter alia,* that the deceased was poisoned by carbon monoxide gas from the heater by reason of the heater not being installed as required by the ordinance and by reason of the careless and negligent manner in which the heater was installed. The declaration was demurred to and the demurrer overruled. A plea of the general issue was then filed.

The premises in question were known as 535 North Albany avenue, Chicago. About the end of July, 1914, the defendant, who up to that time owned the premises in question, sold them to one Charles Kocher. Just prior to purchasing them Kocher made an examination of the premises. The defendant, after selling them to Kocher, rented them from him for several months. The house had been built by the defendant.

On October 12, 1914, Kocher, who at that time owned the premises in question, by written lease, rented them for dwelling purposes to Mary E. Mercer and her husband, from November 1, 1914, until April 30, 1916, for the sum of $468. On the 5th of November, 1914, the defendant and his family moved out and the plaintiff and her family moved in.

The only bathroom in the house was on the second floor. It contained a bathtub; an instantaneous crescent type Humphrey hot-water heater, to which was attached an exhaust pipe; toilet bowl; a ventilating sewer pipe; flush tank, several inches below the ceiling, and a small gas pipe. The bathroom measured 4 ft. 6 in. by 5 ft. 6 in. On the north side of the room, owing to a slanting roof, the wall was only 3 feet high; on the other side of the room the ceiling was about 8 feet high. As you entered the bathroom you faced north. At the right of the bathtub was the hot-water heater. The only window in the bathroom was above the bathtub in the slanting part of the roof. An exhaust pipe, 3 inches in diameter, extended from the heater up along the east wall towards the ceiling. It was attached to the top of the heater and ended in the southeast corner of the bathroom over or behind the flush tank. It had no connection with the outer air. Above it, or in that general area, there was a hole in the ceiling; it was slightly larger than the exhaust pipe. Kocher testified that the exhaust pipe went through the ceiling. Some witnesses stated that the end of the pipe was difficult to see. The heater was used for the purpose of producing hot water for use in the bathtub. It had been put in, some years previously, by the defendant at a time when he owned the premises. The plaintiff testified that the defendant told her "that they had used it for about 12 or 13 years, or something like that."

On August 29, 1915, at about 3:30 p. m., Charles Mercer, about 14 years of age, son of Mary E. Mercer,

the administratrix and plaintiff, went to the bathroom at the request of his mother, who had already lighted the heater, to take a bath. Shortly afterwards, when downstairs, she heard water dropping and thinking something was wrong, called her son, but received no answer. She then went up to the bathroom and found him sitting up in the bathtub, dead. The window and the door had been closed, the heater was lighted and the water was running. The coroner's physician who examined the body of the boy and examined the place of his death gave it as his opinion that death was caused by the inhalation of carbon monoxide gas, or gas poison. The coroner's jury found that he died "from poisoning by carbon monoxide gas generated by instantaneous water heater in the bathroom of home on August 29, 1915."

An ordinance of the City of Chicago, which went into effect April 12, 1911, was offered in evidence. It provided that a permit should be obtained in order to install a hot-water heater in a private house. The evidence further showed that no permit for the heater in question had been obtained.

On February 28, 1916, the plaintiff, as administratrix in consideration of $100 and an allowance of the rent at $26 a month for "something like September, October and November" covenanted not to sue Kocher on account of the death of her son.

At the close of the plaintiff's evidence, the defendant requested the court to instruct the jury to find the defendant not guilty. The instruction was given and the jury returned a verdict accordingly. The plaintiff then made a motion for new trial, which was overruled.

This is a case of new impression. There are many cases pertaining to the sale of personal property and the liability of the vendor to third persons. Here, however, the heater was a fixture and therefore part

of the real estate sold by the defendant to Kocher. The question arises, is the grantor liable to the tenant of his grantee? Of course there is no privity of contract. Some generic duty must be found to predicate liability upon. From the long line of decisions beginning with *Levy v. Langridge,* 4 M. & W. 337, and *Winterbottom v. Wright,* 10 M. & W. 109, down to *Huset v. J. I. Case Threshing Mach. Co.,* 120 Fed. 865, the general principle may be deduced—as far as dealing in personal property is concerned—that a vendor is not liable to third parties, who have no contractual relations with him, for negligence in the sale of personal property; but if a vendor sells personal property which he knows to be dangerous, without giving notice of its dangerous qualities, he may become liable to any one who is injured thereby, where the injury might have been reasonably expected. In *Huset v. J. I. Case Threshing Mach. Co., supra,* the court held that a complaint, which set forth, that where a defendant manufactured and sold a threshing machine which contained a certain metal cylinder which was set with rows of steel spikes and which cylinder had a sheet-iron covering so placed that when the machine was in use it would be walked upon by the person operating the machine, and the covering being without sufficient support and incapable of sustaining enough weight, collapsed, when subjected to the weight of the plaintiff, a third person, and injured him, stated a good cause of action. In *Levy v. Langridge, supra,* the father of the plaintiff bought a gun, for the use of himself and his son, from the defendant. The defendant warranted the gun to have been made by one N. and to be a good, safe and secure gun. The evidence showed that the gun was not made by N. and was also poorly manufactured and unsafe and dangerous, which the defendant knew at the time of the sale. The son used the gun and in consequence of its insufficient construction and material it burst and injured him.

It was held in the Court of Exchequer that the judgment in favor of the son and against the defendant should be affirmed on the ground stated by Parke, B.: ''That as there is fraud and damage, the result of that fraud not from an act remote and consequential, but one contemplated by the defendant at the time as one of its results, the party guilty of the fraud is responsible to the party injured.''

It has been held in a number of cases that the manufacturers and vendors of drugs, and various preparations for human consumption, may be liable to third persons for negligence. *Thomas v. Winchester,* 6 N. Y. 397; *Norton v. Sewall,* 106 Mass. 143. The reason for liability in such cases is that the vendor may be assumed to know that the vendee would not suffer but rather those who became purchasers of the drugs for personal consumption.

In the instant case, the evidence shows that the hot-water heater, as it was fixed in the bathroom and when sold as part of the premises, was by itself entirely innocuous. Certainly it was not a nuisance *per se.* It constituted a small portion of the real estate which the defendant sold to Kocher. The only warranty on the part of the defendant, we may assume, was that of title. In fact the evidence does not show that any representations whatever were made by the defendant to his grantee. Thus distinguishing it from *Levy v. Langridge, supra,* and similar cases. In making the sale to Kocher there was no obligation on the defendant to take him about the premises and give him information. Generally speaking, so far as Kocher is concerned, the rule of *caveat emptor* would apply. The evidence does show, however, that Kocher did go over the building and to some extent examined the bathroom, and further, that there was no concealment of any kind on the part of the defendant. Further, there is no evidence of knowledge of imminent danger

on the part of the defendant. He had used the heater for some time without hurt. It appears, therefore, that the facts in the instant case are not subject to the principle applied in *Levy v. Langridge, supra; Huset v. J. I. Case Threshing Mach. Co., supra,* and what may be called the "Drug" cases. The defendant was guilty of no fraud; he made no misrepresentation; was not guilty of wilful concealment; he did not, as far as the evidence shows, have any knowledge of an imminent danger, and the mere act of selling the house and lot to Kocher was not, in its nature, necessarily fraught with danger to the lives of others. We do not wish to imply, however, that, if all those elements had been present, there would have been liability, but merely hold that, at least, in their absence, under the circumstances of the case, there is no liability.

The fact that there was an ordinance requiring a permit for installing such a heater did not give rise to any obligation on the defendant towards the plaintiff. After Kocher bought the property from the defendant, the ordinance bound him but not the defendant. Kocher's failure to obtain a permit might have rendered him, under certain circumstances, liable to the plaintiff, but after Kocher bought the property the defendant was not bound to bring the heater within the ordinance.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE THOMSON especially concurring.

I concur in the decision reached in this case, but I am not able to agree with all that is said in the foregoing opinion.